

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 31, 1991

Honorable Ted B. Lyon
Chairman
Criminal Justice Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-72

Re: Whether the Dallas City Council may control the use of funds confiscated pursuant to the asset forfeiture law (RQ-114)

Dear Senator Lyon:

You ask whether the Dallas City Council has authority to determine the purposes for which funds distributed to the Dallas Police Department pursuant to the asset forfeiture law, chapter 59 of the Code of Criminal Procedure, are to be spent.[1] With the limited exception of certain funds which may be transferred to the control of the city council under a new provision of the asset forfeiture law, we do not believe the council has authority to determine the purposes for which forfeiture funds are to be spent.

Article 59.06 of the Code of Criminal Procedure provides in pertinent part:

(a) All forfeited property shall be administered by the attorney representing the state ... in accordance with accepted accounting practices and with the provisions of any local

---

[1] The question presented in your request literally asked "whether or not the City Council can force the use of confiscated funds into the Department's regular operating budget." We understand your concern, however, to be with the locus of the legal authority to determine the purposes for which forfeiture funds are to be spent, rather than with the rubric under which such funds may be classed for the internal administrative purposes of the City of Dallas and the Dallas Police Department, and accordingly, treat that question here.

agreement[2] entered into between the attorney representing the state and law enforcement agencies. . . .

. . . .

(c) If a local agreement exists between the attorney representing the state and law enforcement agencies, all money, securities, negotiable instruments, stocks or bonds, or things of value, or proceeds from the sale of those items, shall be deposited according to the terms of the agreement into one or more of the following funds:

. . . .

(2) a special fund in the municipal treasury if distributed to a municipal law enforcement agency, to be used solely for law enforcement purposes, such as salaries and overtime pay for officers, officer training, specialized investiga-tive equipment and supplies, and items used by officers in direct law enforcement duties.

. . . .

(d) Proceeds awarded under this chapter to a law enforcement agency . . . may be spent by the agency . . . after a budget for the expenditure of the proceeds has been submitted to the . . . governing body of the municipality. . . . A . . . governing body of a municipality may not use the existence of an award to offset or decrease total salaries, expenses, and allowances that the agency . . . receives from the . . . governing body at or after the time the proceeds are awarded. The head of the agency . . . may not use the existence of an award to increase a salary, expense, or allowance for an employee of the . . . agency

---

[2]The applicable portion of the local agreement entered into by the Dallas County Criminal District Attorney, the City of Dallas, and the Dallas Police Department merely states: "In accordance with Article 59.06(c)(2), C.C.P., all money and proceeds from the sale of contraband received by the CITY/DPD shall be deposited in a special fund in the City Treasury to be used by the Dallas Police Department solely for law enforcement purposes."

> who is budgeted by the . . . governing body unless the . . . govern-
> ing body first approves the expenditure.

Code Crim. Proc. art. 59.06; Acts 1991, 72d Leg., ch. 312, § 2, at 1348 (amending Code Crim. Proc. art. 59.06(c)) (footnote added).

In our opinion, the above-quoted provisions, taken together, contemplate that it is the law enforcement agency -- in this case the Dallas Police Department -- and not the governing body -- here, the Dallas City Council -- that is to determine the law enforcement purposes to which forfeiture funds are to be put. *See* Code Crim. Proc. art. 59.01(4) (defining "[l]aw enforcement agency" for purposes of chapter 59 to include "an agency of the state or an agency of a political subdivision of the state authorized by law to employ peace officers"). The provisions clearly indicate that forfeiture funds are considered as being "awarded to" or "distributed to" and "spent by" the law enforcement agency, not the governing body. Although subsection (d) requires that the law enforcement agency submit a budget for forfeiture fund expenditures to the governing body, and that certain items thereof -- increases of "salary, expense, or allowance" for agency employees "budgeted by the . . . governing body" -- be "approved" by the governing body, these provisions do not give the governing body the authority to determine the purposes for which forfeiture funds are to be spent. To the contrary, by specifying the role the governing body is to play in receiving the agency's forfeiture fund budget and approving certain items thereof, the provisions indicate that the governing body's authority is limited to that specified.[3]

---

[3]We note that the language in subsection (c), subpart (2), of article 59.06 beginning "such as salaries and overtime pay for officers" and continuing to the end of subpart (2) was added in 1991 by section 2 of House Bill 1185. Acts 1991, 72d Leg., ch. 312, § 2, at 1348. Section 3 of House Bill 1185 states: "The change in law made by Section 2 . . . applies only to funds deposited in the municipal treasury on or after the effective date of this Act. Funds deposited before the effective date of this Act are covered by the law in effect when the funds were deposited, and the former law is continued in effect for this purpose." Section 5 provides that House Bill 1185 takes effect September 1, 1991. We understand from the Dallas Police Association that some of the funds at issue were deposited before the September 1 effective date. However, whatever the scope of the "change in law" made by section 2, we do not believe it changed the locus of authority to determine the law enforcement purposes to which forfeiture funds were to be applied. In our opinion, both prior and subsequent to the amendment of subsection (c)(2) by House Bill 1185, article 59.06 has contemplated that it is the law enforcement agency, not the governing body, that is to determine the law enforcement purposes to which forfeiture funds are to be put. *See also* Attorney General Opinion JM-678 (1987) (under predecessor provision, section 5.08(f) of article 4476-15, V.T.C.S., money forfeited to city is to be administered by police department).

We note, however, by way of exception to our conclusion, the 1991 addition to article 59.06 of a new subsection (h), providing that "on agreement between the attorney representing the state or the head of a law enforcement agency and the governing body of a political subdivision," the attorney or head of the agency "shall comply with the request of the governing body to deposit not more than a total of 10 percent of the gross amount credited to the attorney's or agency's fund into the treasury of the political subdivision" to be spent by the governing body on specified kinds of drug abuse prevention, treatment, or rehabilitation programs. Acts 1991, 72d Leg., ch. 312, § 1, at 1347. While we do not understand your request to be concerned with such transfers of funds under these new provisions, we feel compelled to qualify the conclusion we reach here by noting that it is clear that a law enforcement agency would lose control over any funds initially distributed to it and then transferred to the city governing body under new subsection (h). In such cases, the city governing body would acquire authority to determine, within the parameters of subsection (h), the uses to which such funds might be put. With the exception of funds transferred to the city governing body under subsection (h) of article 59.06, however, it is our opinion that it is the law enforcement agency to which funds are distributed under article 59.06, and not the governing body of the city, that has the authority to determine the law enforcement purposes for which such funds are to be spent.

## SUMMARY

Except for funds transferred to the city governing body under subsection (h), it is the law enforcement agency to which forfeiture funds are distributed under article 59.06, and not the governing body of the city, that has the authority to determine the law enforcement purposes for which such forfeiture funds are to be spent.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kay Guajardo and William Walker
Assistant Attorneys General